IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SHERYL N. CHILDERS**, | Case No. 6:13-cv-01922-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**,<br>Commissioner of Social Security, | |
| Defendant. | |

James W. Moller, 8655 S.W. Citizens Dr., Ste. 104, Portland, OR 97070. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Richard M. Rodriguez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant

**Michael H. Simon, District Judge.**

Sheryl N. Childers seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Social Security

Income ("SSI") and Disability Insurance Benefits ("DIB"). Because the Commissioner's

decision is not supported by substantial evidence, the decision is REVERSED and REMANDED

for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id*. (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

"However, a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner

on a ground upon which the Commissioner did not rely. *Id*.; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Ms. Childers filed applications for SSI and DIB on May 10, 2010, alleging disability as of March 31, 2006. AR 202, 223, 227. Born on May 28, 1959, Ms. Childers was 53 years old on the date of the administrative hearing. AR 35. She obtained a GED in 1979 and has past work experience as an agricultural worker, caregiver, administrative assistant, and accounting clerk. AR 251, 253, 319. After the Commissioner denied her applications initially and upon reconsideration, Ms. Childers requested a hearing before an Administrative Law Judge ("ALJ"). AR 151. After an administrative hearing, held on June 11, 2012, the ALJ found Ms. Childers not to be disabled. AR 11-21, 29. Ms. Childers sought review of the ALJ's decision and submitted additional evidence to the Appeals Council ("AC"). AR 2. The AC admitted the additional evidence into the record but denied Ms. Childers's request for review on August 27, 2013. AR 1. The ALJ's decision thus became the final decision of the Commissioner, and this appeal followed.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
      expected to result in death, an impairment is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
      or must be expected to last for a continuous period of at least 12 months.
      20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
      impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
      416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
      proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
      impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
      then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
      416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
      the listed impairments, the analysis proceeds beyond step three. At that
      point, the ALJ must evaluate medical and other relevant evidence to assess
      and determine the claimant's "residual functional capacity" ("RFC"). This
      is an assessment of work-related activities that the claimant may still
      perform on a regular and continuing basis, despite any limitations imposed
      by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
      416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC,
      the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
      assessment? If so, then the claimant is not disabled. 20 C.F.R.
      §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform
      his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
      is the claimant able to make an adjustment to other work that exists in
      significant numbers in the national economy? If so, then the claimant is
      not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);
      416.960(c). If the claimant cannot perform such work, he or she is
      disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis. At step one, he found that Ms. Childers had not engaged in substantial gainful activity since March 31, 2006. AR 13. At step two, the ALJ concluded that Ms. Childers had the following severe impairments: fibromyalgia, cervical spine degenerative joint disease, and left knee status post meniscectomy and Hauser procedure. *Id*. At step three, the ALJ determined that Ms. Childers did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 14.

The ALJ next assessed Ms. Childers's RFC and found that she could perform light work with occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, and occasional balancing, kneeling, stooping, crouching, and crawling. AR 15. At step four, the ALJ found that Ms. Childers retained the ability to perform her past relevant work as an accounting clerk. AR 20. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded in

the alternative that Ms. Childers could perform jobs that exist in significant numbers in the national economy, including floor attendant for a bingo parlor. AR 20-21. Accordingly, the ALJ found Ms. Childers was not disabled. *Id.*

## DISCUSSION

Ms. Childers argues that the Commissioner erred by (A) improperly evaluating the medical opinions of three providers; (B) finding Ms. Childers to be not fully credible; and (C) failing to consider medical evidence submitted after the hearing. Because the ALJ improperly evaluated the medical evidence, his decision is reversed and remanded for further proceedings consistent with this opinion.

## A. Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining

physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

**1. Orthopedic Surgeon Christopher Walton, M.D.**

Ms. Childers first contests the ALJ's evaluation of Ms. Childers's knee surgeon, Christopher Walton, M.D. Dr. Walton performed right-knee arthroscopic surgery for Ms. Childers's medial meniscus tear on November 21, 2002. On examination, Dr. Walton observed unstable grade III changes in the weight-bearing area of the medial femoral condyle and described "further tearing of the medial meniscus with extension to the peripheral fibers." AR 387.

Dr. Walton next evaluated Ms. Childers in April 2005. AR 383-84. He noted that Ms. Childers reported that both of her knees bother her "all the time," and diagnosed developing osteoarthritis in the right knee and a recurrent medial meniscus tear in the left knee. *Id.* Dr. Walton recommended injections, hinged knee sleeves for both knees, and left knee arthroscopic surgery. On August 11, 2005, Ms. Childers underwent left-knee arthroscopic surgery. AR 378. For post-operation soreness, Dr. Walton provided Ms. Childers with samples of Celebrex on September 21, 2005. AR 372. Upon examination on October 21, 2005, Ms. Childers

was noted to be improving but still sore. AR 371. Later that year Dr. Walton opined that Ms. Childers had early underlying osteoarthritis in both knees. *Id*.

At step two, the ALJ found that Ms. Childers's left-knee status post meniscectomy and Hauser procedure was a severe impairment. AR 13. The ALJ also discussed Ms. Childers's knee condition at length, citing to Dr. Walton's treatment notes in the record. AR 17. Because the ALJ considered and addressed Dr. Walton's opinion in his written decision, including his diagnosis of moderate osteoarthritis, and included appropriate postural accommodations in the RFC, the Court finds no error in the ALJ's assessment of Dr. Walton's opinion. *See* AR 15-17, 518.

### 2.  Orthopedist Craig Mohler, M.D., and Treating Physician Thea Petersen, M.D.

Ms. Childers next argues that the ALJ improperly rejected the opinions of Craig Mohler, M.D., and Thea Petersen, M.D. Dr. Mohler examined Ms. Childers for the first time on March 7, 2011. AR 521-23. Dr. Mohler observed that Ms. Childers reported constant pain over the right medial aspect of her right knee for the past year. He noted various positive findings and discussed total right-knee arthroplasty with Ms. Childers. *Id*. Dr. Mohler also noted that he concurred with the opinion of Christopher Park, ORT, who performed a functional capacity evaluation on March 29, 2012. AR 565. Mr. Park's examination revealed that Ms. Childers could perform sedentary-light work with occasional standing and walking, and frequent sitting. AR 553-60.

Dr. Petersen first examined Ms. Childers on July 26, 2011. AR 450-51. Dr. Petersen established care as Ms. Childers's treating physician. *Id*. Dr. Petersen concurred with Dr. Park's physical capacity evaluation regarding Ms. Childers's limitations. AR 19, 450, 564-65. 567. Dr. Petersen opined that Ms. Childers could lift fifteen pounds occasionally and five pounds frequently. AR 564.

The ALJ gave some weight to these assessments, but ultimately found that Ms. Childers could perform light lifting and that she had no limitations on standing or walking. AR 19. The ALJ instead credited the opinions of the state agency medical consultants, who assessed limitations in contrast with the opinions of Dr. Mohler and Dr. Petersen. AR 18-19. For example, consultative physician Kurt Brewster, M.D., opined that Ms. Childers can perform light work and retained the ability to lift twenty pounds maximum and ten pounds frequently. AR 398. Consultative physician DeWayde Perry, M.D. also opined that Ms. Childers was capable of performing medium work, lifting fifty pounds occasionally, and frequently lifting twenty-five pounds. AR 546-52. Although the ALJ gave substantial weight to the opinions of the consultative physicians, he was still required to provide specific, legitimate reasons for rejecting the controverted opinions of Drs. Mohler and Petersen. *See Lester*, 81 F.3d at 830.

The ALJ rejected the opinions of Drs. Mohler and Petersen. AR 19. First, he noted that their opinions were inconsistent with examination and treatment records, due in part to the absence of "significant neurological findings" in the record. *Id*. The Commissioner expands on this reasoning, arguing that physical examinations confirmed that Ms. Childers has "no significant motor or sensory deficits in the lower extremities, normal coordination, full range of motion, and normal gait and station." Def.'s Br. 13; AR 16, 19, 396-98, 452, 464, 487, 544-46. The Court rejects this argument. The evidence discussed by the Commissioner does not contradict the specific findings and limitations noted by Drs. Mohler and Petersen. Specifically, a lack of motor or sensory deficits does not impugn, for example, Dr. Petersen's restrictions on lifting. Because the Commissioner has not shown inconsistency within the examination and treatment records of the opinions at issue, the ALJ's finding that these opinions were inconsistent

with the examination and treatment records was not a specific, legitimate reason for rejecting them. *See Lester*, 81 F.3d at 830.

Second, the ALJ found that the opinions of Drs. Mohler and Petersen were inconsistent with evidence that Ms. Childers responded well to treatment and medication. For example, the Commissioner notes that Ms. Childers responded well to physical therapy, AR 498, and that her left knee improved after surgery. AR 17, 380, 578. The Commissioner also points out that Ms. Childers's pain symptoms were managed by amitriptyline and Zanaflex. AR 16-17, 463-64. The Court rejects this argument. While the record contains some evidence that Ms. Childers's condition improved with medication, her overall medical history reveals ongoing intractable knee pain and an inconsistent response to medication over time. *See, e.g.*, AR 454 (note from Dr. Petersen recommending a trial of methocarbamol because previous medication "did not work well for her"), 464 (note from medical provider diagnosing "chronic intractable pain of the cervical spine due to degenerative disc disease," despite some successful pain management using Zanaflex). Thus, the evidence of short-lived favorable responses to medication and treatment in the record is not a legally sufficient reason to reject the opinions of Drs. Mohler and Petersen.

In sum, the ALJ failed to provide sufficient specific, legitimate reasons for rejecting the opinions of these providers. The Commissioner's decision should therefore be reversed.[1]

## B.  Credibility

Ms. Childers next argues that the ALJ improperly rejected her credibility. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and

---

[1] The Commissioner also argues that the ALJ did not err in his evaluation of the medical evidence because Drs. Petersen and Mohler did not offer any specific functional limitations aside from their concurrence with Dr. Park's physical capacity evaluation. Def.'s Br. 12; AR 19, 567. This is, first, inaccurate; both providers noted specific limitations in their written assessments. *See* AR 564. Further, the fact that these providers concurred with Dr. Park does not absolve the ALJ of his responsibility to provide legally sufficient reasons for rejecting their opinions.

limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, *available at* 1996 WL 374186 (Jul. 2, 1996).

Further, the Ninth Circuit has said that an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Ms. Childers testified that she is unable to work due to a combination of physical and mental impairments. She testified that she has neck and back pain, pain and numbness in her upper extremities, headaches, knee problems, and trouble sleeping. AR 39. Ms. Childers stated that she has difficulty working on a computer because of neck and upper back pain, as well as severe cramping, pain, and numbness in her arms. She stated that her headaches interfere with her ability to concentrate. AR 39. Ms. Childers also described her knee problems with a history of multiple surgeries, including total knee replacement on the right. She has difficulty standing, walking, and balancing. AR 44.

 The ALJ rejected Ms. Childers's testimony as to the nature and extent of her limitations. AR 14-20. First, he found that Ms. Childers's conservative treatment record contradicted her testimony

as to the severity of her pain. *Id.* Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Further, an "individual's statements may be less credible if … the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, *available at* 1996 WL 374186. Here, despite her complaints of pain, Ms. Childers testified that she did not take prescription pain medication. AR 14, 42, 45. She further testified, however, that she tries to avoid taking prescription medication for health reasons and due to side effects.[2] *Id.* Further, she stated that she uses prescription medication such as Hydrocodone and Oxycodone when the pain is intolerable, as well as ibuprofen, extra-strength Tylenol, and medical marijuana. AR 42, 50. Ms. Childers's conservative course of treatment therefore neither bolsters nor undermines her testimony regarding the severity of her pain and related limitations, because she provided a "good reason" for her failure to more aggressively treat her pain. *See, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1015 n.19 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

Second, the ALJ found that Ms. Childers's activities after her alleged onset date undermined her credibility as to the severity of her limitations. AR 13, 18. Evidence of an active lifestyle can undermine a disability claimant's credibility, *Bray*, 554 F.3d at 1226-27, and daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that despite her testimony regarding her limitations, Ms. Childers performed work activities in 2008, 2009, and 2010. AR 227, 232, 313. Ms. Childers, however, did not perform work at a substantial gainful level after the alleged onset date of 2006. Her part-time work was limited to a few hours

---

[2] Contrary to the ALJ's implication, the Court finds that Ms. Childers's alcohol consumption does not bear upon her decision not to take prescription pain medication. *See* AR 15.

a day, a few days each week, and she ultimately stopped working due to her symptoms. AR 36-37, 341, 364. The type and intensity of work Ms. Childers performed after her alleged disability onset date is entirely consistent with her testimony regarding her symptoms and limitations.

The ALJ also found that Ms. Childers's daily activities such as doing laundry, cleaning, sweeping, performing yard work, shopping for groceries, and doing volunteer work contradicted her subjective symptom testimony. AR 17-18. On close analysis of Ms. Childers's testimony regarding her limitations, however, and her statements regarding her ability to perform these activities occasionally and in short duration, the Court finds no inconsistency. *See* AR 39, 40, 48, 265, 300-03. In sum, Ms. Childers's work activity and activities of daily living therefore do not provide clear and convincing reason to reject her testimony that she was completely disabled after her alleged onset date. *See Rollins*, 261 F.3d at 857.

Third, the ALJ found that Ms. Childers responded positively to treatment. Impairments that can be controlled with medication and conservative treatment are not disabling. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, the ALJ noted that Ms. Childers's pain improved with medication and physical therapy. AR 17, 463-64, 498. The ALJ also noted Dr. Mohler's statement in 2012 that Ms. Childers's left knee did not require surgery or injections. AR 17, 578. As discussed above, it was not proper for the ALJ to infer from some positive responses to medication that Ms. Childers's condition was easily improved with medication. The record as a whole reveals that, while Ms. Childers did exhibit some improvement with therapy and medications, her overall level of pain and limitation remained relatively stable. Ms. Childers's sporadically positive responses to treatment therefore do not provide a clear and convincing reason for rejecting her testimony regarding pain and knee impairments. *See Warre*, 439 F.3d at 1006.

PAGE 14 – OPINION AND ORDER

Fourth, the ALJ found that Ms. Childers's statements regarding her limitations were inconsistent with the objective clinical findings in the record. AR 16. The ALJ may consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [the claimant] complains" when assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (quotation marks omitted). Here, the ALJ noted that Ms. Childers's cervical MRI findings and consistently negative neurological findings were inconsistent with her testimony. AR 468-88. Ms. Childers's medical records also reveal that she ambulates normally and has normal strength and range of motion, despite allegations of ongoing knee problems. AR 396-98, 452, 464, 487, 544-46. On this record, the ALJ provided one clear and convincing reason to support his credibility finding. While Ms. Childers provides an alternative, rational interpretation of the objective medical findings, the Commissioner's reasonable conclusion must be upheld. *Burch*, 400 F.3d at 679.

3.      **Appeals Council's Rejection of Additional Evidence**

Ms. Childers argues, finally, that the Commissioner's decision should be reversed because the Appeals Council did not consider two documents submitted after the ALJ's decision. Pl.'s Br. 16. In the Ninth Circuit, where the claimant submits evidence after the ALJ's decision and the Appeals Council specifically considers that evidence, the administrative record under review "includes evidence submitted to and considered by the Appeals Council." *Brewes v. Comm'r*, 682 F.3d 1157, 1162 (9th Cir. 2012); *see also Ramirez v. Shalala*, 8 F.3d 1449, 1451–52 (9th Cir.1993).

The Appeals Council's August 27, 2013 denial of Ms. Childers's request for review states that it "looked at Southland Mental Health medical records dated July 31, 2012 to August 13, 2012 [and] Southlane Medical Group medical records dated July 3, 2012 to

August 14, 2012." AR 2. These medical documents are therefore part of the record before the Court. *Brewes*, 682 F.3d at 1162. The Appeals Council concluded that the new information submitted by Ms. Childers "does not affect the decision about whether [Ms. Childers was] disabled beginning on or before June 29, 2012" and refused to disturb the ALJ's disability determination. AR 2.

The new evidence contains treatment notes from Dr. Petersen, who opined that Ms. Childers is unable to perform any task for an extended period of time, including prolonged standing, and states that Ms. Childers is not capable of maintaining gainful employment. Because this evidence sets forth concrete functional limitations that are relevant to the disability determination, the ALJ should have the opportunity to consider this evidence on remand and, if necessary, incorporate any limitations substantiated therein into the RFC.

**C.  Type of Remand**

Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, --- F.3d ---, 2014 WL 7332774, at *7 (9th Cir. Dec. 24, 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999.

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, --- F.3d ---, 2014 WL 7398892, at *7 (9th Cir. Dec. 31, 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 2014 WL 7398892, at *6 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings" (citing *Garrison*, 759 F.3d at 1021)).

Here, the ALJ failed to provide legally sufficient reason for rejecting Dr. Mohler's opinion as well as Dr. Petersen's opinion, and failed to incorporate the limitations they assessed into the RFC. The ALJ should thus be given the opportunity to consider those limitations, incorporate them into the RFC, and, if necessary, take new testimony from a vocational expert regarding Ms. Childers's ability to perform jobs that exist in significant numbers in the national economy. Because there are outstanding issues that must be resolved before a determination of disability can be made, the case is remanded for further proceedings consistent with this opinion.

**CONCLUSION**

The Commissioner's decision that Ms. Childers is capable of performing light work was

not supported by substantial evidence in the record, and it is therefore REVERSED and

REMANDED for further proceedings

**IT IS SO ORDERED**.

DATED this 4th day of February, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge